IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

APR 06 2017

Clerk, U.S. Courts
District of Montana
Missoula Division

| | |
|---|---|
| DALE MICHAEL HANSON,<br><br>Petitioner,<br><br>vs.<br><br>STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 16-152-M-DLC-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATIONS OF UNITED<br>STATES MAGISTRATE JUDGE |

On December 15, 2016, Petitioner Dale Michael Hanson filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hanson is a state prisoner proceeding pro se.

In 1995, following a jury trial, Hanson was convicted of Sexual Assault and Deviate Sexual Conduct. The charges lodged against Hanson in the criminal trial stemmed from inappropriate interactions Hanson had with the young son of former girlfriend, E.G., from whom Hanson was estranged at the time of trial. Hanson's conviction was affirmed on direct appeal. *State v. Hanson*, 283 Mont. 316, 940 P. 2d 1166 (1997).

Hanson is currently incarcerated and awaiting trial on charges of Failure to Register as a Sexual Offender and Intimidation, in Flathead County; the trial is

1

scheduled for April 19, 2017. (Doc. 4 at 4, ¶13(A); 5, ¶¶13(B)(i), 13(B)(ii); and 6, ¶14). On February 15, 2017, Hanson was ordered to clarify the constitutional claims he was making and to explain whether he was attempting to lodge an attack on his 1995 conviction, or if he was challenging the new charges filed against him in Flathead County. (Doc. 2). Hanson timely responded and explains that he is attempting to make a successive attack on the 1995 conviction as well as challenging the current charges pending against him. (Doc. 4-1 at 1, 10). Hanson also provided the Court with additional exhibits in support of his petition. (Docs. 4, 4-1, 4-2, 4-3, and 8-1).

## I.    Procedural History

As set forth above, Hanson's 1995 convictions were affirmed on appeal. Hanson then sought postconviction relief alleging ineffective assistance of counsel; the trial court denied Hanson relief. The denial was upheld by the Montana Supreme Court. *State v. Hanson*, 1999 MT 226, 296 Mont. 82, 988 P. 2d 299.

Hanson then filed a petition for habeas corpus relief with this Court. See, *Hanson v. Mahoney*, Cause No. CV-00-49-M-LBE. The majority of Hanson's claims were deemed to be procedurally barred while a portion of an ineffective assistance of counsel claim Hanson advanced was denied on its merits. *Id.*, Dkt. Nos. 38 and 52. Hanson's petition was dismissed. Hanson appealed to the Ninth Circuit which ultimately affirmed the dismissal of Hanson's petition finding that he

did not demonstrate a valid basis to excuse the default of his claims. *Hanson v. Mahoney*, 433 F. 3d 1107, 1114 (9th Cir. 2006).

In August of 2012, Hanson, represented by counsel, filed a second petition for postconviction relief based upon newly discovered evidence. Apparently, prior to Hanson's 1995 trial, several potential witnesses contacted the case detective, Maxine Lamb, to express their concerns that they believed E.G. to be lying. Lamb allegedly told the witnesses to "stay away from the courtroom and the case" and did not tell Hanson's trial attorney about these witnesses. See, *Hanson v. State*, 2016 MT 152, ¶ 7, 384 Mont. 17, 372 P. 3d 1281. Hanson accused Lamb of unlawfully withholding this favorable information. Hanson filed five affidavits in support of his petition. *Id.*

Hanson also raised issues that were not newly discovered. Hanson alleged trial counsel should have introduced several messages E.G. left on his answering machine that indicated E.G. was angry with Hanson and sought to "get even" with him. *Id.* Also, Hanson referenced that a contributor to the 1995 Presentence Investigation Report expressed his concern that Hanson might actually be innocent and that E.G.'s son may have been coached to provide false allegations against Hanson. *Id.*

In response, the State argued that Hanson's petition appeared to be barred by the one year statute of limitations for filing a petition for postconviction relief

based upon newly discovered evidence. *Id.* at ¶ 8. The State also argued that the information Hanson put forth was not, in fact, newly discovered. Finally, the State argued that because Detective Lamb had been deceased for several years, it could not directly respond to Hanson's allegations against her. *Id.*

The trial court authorized discovery and set a deadline for completion of discovery by May 24, 2013. The State noticed Hanson's deposition for May 17, 2013, to be taken at the Flathead County Attorney's Office. *Id.* at ¶ 9. Hanson responded by alternatively requesting the following relief: the notice be quashed, a protective order, or, the deposition be conducted telephonically. Apparently, Hanson refused to register as a sexual offender. Because of the failure to register because he maintained his innocence. And because there was an outstanding 2009 warrant for Hanson's arrest for failure to register, Hanson believed the State was using the deposition as a ruse to effectuate his arrest. *Id.* The State opposed Hanson's motion, denying any improper motive and pointed out that the arrest warrant was several years old. Additionally, the State argued it did not contrive a civil action as a guise to effectuate Hanson's arrest; the civil proceedings were initiated by Hanson himself. *Id.*

On May 31, 2013, the trial court denied Hanson's combined motions. *Id.* at ¶

10. On June 21, 2013, Hanson filed a motion for summary judgment.[1] The State requested the trial court expand the time it had to respond to the summary judgment motion so that it could first depose Hanson. *Id.* at ¶10. The trial court ordered the State's responsive brief to be filed within the fifteen days following Hanson's deposition. The State noticed a second deposition of Hanson for July 25, 2013. Hanson again failed to appear. *Id.*

On August 9, 2013, the State filed a motion to compel Hanson's deposition. The trial court granted the motion and ordered Hanson to personally appear. *Id.* at ¶11. Further, the court expressly advised Hanson that failure to attend the deposition could result in sanctions against him, including dismissal of Hanson's case with prejudice. *Id.* Hanson was served with a third notice of deposition scheduled for October 20, 2014; again, Hanson failed to appear. *Id.*

On October 24, 2014, the State filed a motion to dismiss Hanson's petition with prejudice for his failure to comply with the Montana Rules of Civil Procedure and with the trial court's order compelling his deposition. *Id.* at ¶12. On April 3, 2015, the trial court granted the State's motion as a sanction for Hanson's failure to comply with discovery process by not appearing at the three noticed depositions. *Id.*

---

[1] Hanson filed a copy of this motion as a supplement to his petition. See, (Doc. 3).

On appeal, the Montana Supreme Court found that the trial court did not abuse its discretion by dismissing Hanson's postconviction petition as a sanction for discovery abuse. The Court began by noting that the Montana Rules of Civil Procedure provide for such a remedy. *Id.* at ¶15, citing M.R. Civ. P. 37(d)(1)(A)(i), 37(d)(3), and 37(b)(2)(A)(v). The Court then looked to the three criteria it uses to determine whether a sanction is an abuse of discretion: 1) whether the consequences imposed by the sanctions relate to the extent and nature of the actual discovery abuse; 2) whether the extent of the prejudice the discovery abused caused the opposing party were considerable; and, 3) whether the court expressly warned the abusing party of the consequences. *Id.* at ¶17, citing *Xin Xu v. McLaughlin Inst. For Biomedical Sci., Inc.*, 2005 MT 209, ¶26, 328 Mont. 232, 119 P. 3d 100.

The Montana Supreme Court noted that while dismissal with prejudice was a harsh and dispositive penalty, Hanson ignored a court order and the basis for doing so, that he had an outstanding warrant for his arrest, did not excuse his repeated refusal to appear at the properly noticed depositions. The Court held the severity of the sanction was relative to the extent and nature of Hanson's discovery abuse. *Id.* at ¶18. The Court also determined that Hanson's refusal to be deposed prevented the State from developing its defense relative to the statute of limitations at issue and prevented the case from proceeding through the discovery phase. The

State spent considerable time and resources attempting to depose Hanson and was duly prejudiced by Hanson's failure to appear. *Id.* at ¶19. Finally, the Court found that Hanson was expressly put on notice in the order compelling his attendance at the deposition that his failure to appear could result in dismissal of his petition with prejudice. *Id.* at ¶20. Because all of the *Xu* factors had been met, there was no abuse of discretion and the trial court was affirmed. *Id.* at ¶¶21-22.

## II. Analysis

For the reasons discussed below, Hanson's petition should be dismissed. Any challenges that Hanson advances relative to his current custody are not exhausted and should be dismissed without prejudice. Any claims that Hanson seeks to make against his 1995 conviction have been procedurally defaulted without excuse and should be dismissed with prejudice.

### A. Exhaustion and Procedural Default

Federal courts may not grant a writ of habeas corpus brought by an individual in custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement is grounded in the principles of comity and gives states the first opportunity to correct alleged violations of a prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

To meet the exhaustion requirement, a petitioner must (1) use the "remedies

available," § 2254(b)(1)(A), through the state's established procedures for appellate review, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); (2) describe "the federal legal theory on which his claim is based," *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008); and (3) describe "the operative facts . . . necessary to give application to the constitutional principle upon which the petitioner relies," *id.* See also *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (discussing *Picard v. Connor*, 404 U.S. 270 (1971), and *Anderson v. Harless*, 459 U.S. 4 (1982)). A petitioner must meet all three prongs of the test in one proceeding.

Closely related to the exhaustion requirement is the procedural bar doctrine. If the state court denied the claim on state procedural grounds, it will be deemed procedurally defaulted unless the petitioner can show cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). If a claim is unexhausted but the state procedural rules would not bar consideration of the claim, it is technically exhausted but will be deemed procedurally defaulted unless the petitioner can show cause and prejudice or, alternatively, a fundamental miscarriage of justice. See, e.g., *Beaty v. Stewart*, 303 F. 3d 975, 987 (9th Cir. 2002). State procedural rules must be both independent and adequate in order to bar federal habeas review. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985); *Valerio v. Crawford*, 306 F. 3d 742, 773-74 (9th Cir. 2002)(en banc).

### B. Hanson's Challenge to His Current Custody

Hanson's own filings make clear that his jury trial on the new charges is not scheduled until April 19, 2017. Thus, the case is in its earliest stages and, depending on the outcome at trial, there are still remedies available to Hanson under state law, including direct and collateral review. Thus, Hanson has not exhausted his state remedies. 28 U.S.C. §2254(c). Because Hanson has not yet exhausted his available state court remedies, this Court cannot review the claim. See, *Rose v. Lundy*, 455 U.S. 509 (1982). Dismissal is without prejudice and Hanson may return to this Court if and when he fully exhausts the claims relative to his current custody in the state courts.

### C. Hanson's Challenge to His 1995 Conviction

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 588 U.S. 53, 55 (2009), (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. *Wainwright v. Sykes*, 433 U.S. 72, 81-81 (1977). This doctrine bars federal habeas relief when (1) "a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," and (2) "the state

9

judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 729-30. In such a case, federal review of the claim is barred unless petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 750.

To qualify as an "adequate" procedural ground, a state rule must be "firmly established and regularly followed." *Kindler*, 588 U.S. at 60 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)). In *Kindler*, the Court held that a discretionary state procedural bar may count as an adequate and independent ground for denying a federal habeas petition "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not in others." *Id.* at 61.

i.   **Independent and Adequate State Bar**

Hanson sought to advance claims that his right to due process under the Fourteenth Amendment and his right to call witnesses on his own behalf under the Sixth Amendment were violated by Detective Lamb's actions. See, e.g. (Doc. 3 at 8- 16). But Hanson's postconviction petition was dismissed with prejudice as a sanction for his repeated failure to appear at scheduled depositions.

A federal court must first consider whether the procedural rule the state court invoked to bar the claim is both "independent' and "adequate" to preclude review. "For a state procedural rule to be 'independent,' the state law basis for the

decision must not be interwoven with federal law." *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983). A state law ground is interwoven with federal law where application of the state procedural rule requires the state court to resolve a question of federal law. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). For a state procedural rule to be "adequate," it must be clear, well-established and consistently applied. *Calderon v. U.S. Dist. Ct.*, 96 F. 3d 1126, 1129 (9th Cir. 1996).

In analyzing whether dismissal with prejudice was an appropriate sanction, the Montana Supreme Court referenced the Montana Rules of Civil Procedure and also the three part test outlined in *Xu*. Although *Xu* was a 2005 case, the principles enunciated therein had been well-established and followed for nearly 25 years:

> Since 1981, it has been this Court's position that dilatory abuse of discovery must no longer be dealt with leniently and that transgressors of discovery abuses should be punished rather than encouraged repeatedly to cooperate. *Smith v. Butte-Silverbow County*, 276 Mont. 329, 332, 916 P. 2d 91, 92-93 (1996) (citing *Owen v. F. A. Buttrey Co.*, 192 Mont. 274, 277, 627 P. 2d 1233, 135 (1981)("[J]udicial indulgence in abuses of the discovery process has been increasingly replaced by a tougher, less tolerant attitude toward parties who frustrate, rather than facilitate, discovery.")).

*Hanson*, 2016 MT 152, ¶ 16.

There was an independent state ground allowing for the dismissal of Hanson's postconviction petition. Invocation of the *Xu* test required no consideration of federal law. Moreover, even though the trial court had discretion to determine what sanction was appropriate for Hanson's discovery abuse, the rule

of *Xu* was "firmly established" and, thus, meets the adequate criteria. Even in situations where a discretionary rule has the ability to be applied in a seemingly inconsistent manner, this does not defeat its application under the independent and adequate doctrine. "Discretion enables a court to home in on case-specific consideration and to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Walker v. Martin*, 562 U.S. 307, 320 (finding that California's general "reasonableness" time standard although discretionary qualifies as an independent and adequate state ground to bar federal habeas relief). After consideration of Hanson's actions and application of the *Xu* criteria, the Court determined that dismissal with prejudice of Hanson's petition was the appropriate remedy. This was a proper exercise of the Court's discretion.

Because the procedural rule invoked by the state court was both adequate and independent, this Court must then consider whether Hanson has established either "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or that the failure of this Court to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

### ii.   Cause and Prejudice

The "cause" standard requires Hanson to show that some objective factor external to the defense impeded counsel's efforts to construct or raise the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). General categories of

cause include interference by officials that makes compliance with procedural rules impracticable or constitutionally ineffective counsel. *Id.* But, here, Hanson cannot make such a showing. It was Hanson's own actions, his failure to appear at three depositions and to abide by a court order compelling his appearance, which resulted in the dismissal of his petition. Because he cannot make the requisite showing of cause, the court need not address the prejudice issue. *Sexton v. Cozner*, 679 F. 3d 1150, 1157-58 (9th Cir. 2012).

### iii. Fundamental Miscarriage of Justice

"Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has cause the conviction of one innocent of the crime." *McClesky v. Zant*, 499 U.S. 467, 494 (1991). This is the class of cases involving a fundamental miscarriage of justice. In order to pass through this gateway and have a procedurally defaulted claim heard on the merits, a petitioner must establish that in light of newly discovered evidence "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

This exception is limited to petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Id.* (citing *Murray*, 477 U.S. at 496). "Actual innocence" means factual innocence, not a mere legal insufficiency. *Bousley v. United Sates*, 523 U.S. 614, 623-24 (1998). To be credible, an actual-innocence claim must be supported by "new reliable evidence- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence- that was not presented at trial." *Schlup*, 513 U.S. at 324.

Initially, Hanson argued that his newly discovered evidence consisted of statements from three witnesses who offered "exculpatory information" that Detective Lamb "consistently deep-sixed" and "suppressed." (Doc. 3 at 5). These three individuals were Mark Schmidt, Shirley Schmidt, and Yvonne Marum. *Id.* at 6. Apparently, Hanson filed affidavits from each in support of his petition for postconviction relief.[2]

Yvonne Marum lived kitty-corner from Hanson in the Forest Acres Trailer Court. She had two young sons who were regularly at Hanson's home and when she questioned them about any problems, they indicated nothing inappropriate had ever happened between them and Hanson. See, *Hanson v. State*, DA 15-0352, Br. of Appellee at 7 (filed Dec. 31, 2015).[3] Additionally, Marum's kids played with

---

[2] Following the filing of the postconviction petition, but prior to the filing of his motion for summary judgment, Hanson identified one more witness, Scott Marum. (Doc. 3 at 5-6). Scott Marum is the son of Yvonne Marum. *Id.* at 6.

[3] All state court briefing and opinions are available at: https://supremecourtdocket.mt.gov/ (accessed March 31,

E.G.'s son and he never disclosed any problems with or abuse from Hanson. Yvonne Marum apparently told detective Lamb that her sons had relevant and exculpatory information, specifically Hanson had never done anything improper with the boys, but had been like a brother to them. She believed the boys could assist in Hanson's defense. (Doc. 3 at 6). According to Marum, Lamb's response was:

> She told me no, we could not do any of that. "You guys aren't allowed to come in the courtroom." I thought the court proceeding must be a private thing, so I didn't question what she said or pursue it any further.

*Id.*

Mark and Shirley Schmidt owned the Forest Acres Trailer Park, where Hanson had lived for 16 years before E.G. made the accusations against him. *Hanson v. State*, DA 15-0352, Br. of Appellee at 8. Shirley and Mark checked with park residents who had children and no one reported any problems with Hanson. *Id.* They also expressed concerns that E.G. was not a reliable witness and could get her son to make a false allegation. *Id.* According to Hanson, Mark and Shirley Schmidt had an experience with Detective Lamb similar to Yvonne Marum's. They contacted Lamb with their concerns about E.G.'s "bizarre behavior, her reputation for dishonesty, and her habit of trying to get others who

---

2017).

15

angered her in trouble." (Doc. 3 at 7). According to the Schmidt's, Lamb did not to hear any of it and she blew the Schmidt's off. *Id.* Mark attended the trial every day, but was not called as a witness. He did, however, testify at Hanson's sentencing hearing. *Hanson v. State*, DA 15-0352, Br. of Appellee at 8.

Hanson explained that there is no reference in any of the discovery materials from the Flathead County Sheriff's Office to a meeting between Lamb and these potential witnesses. Hanson asserts, "[t]his tells us that either Lamb destroyed her notes of these meeting or that she never prepared notes." (Doc. 3 at 7). Moreover, Hanson argued Lamb's action were demonstrative of a larger pattern of the detective's interference with the witnesses' desire to testify and/or speak with the defense and, consequently, interfered with the defense's access to the witnesses. *Id.* at 7-8, 11. This testimony, had it been presented at trial, would have established that E.G. "was a vindictive liar and that, although Hanson had the opportunity, [he] never acted improperly to at least two other boys." *Id.* at 12. Additionally, this would have offered an explanation for E.G.'s accusation and opened the door for an expert on pedophilia and to testify that Hanson did not fit the mold of a pedophile. *Id.*

In response, to Hanson's postconviction petition, the State argued that none of this evidence was truly newly discovered or material. Relative to Mark Schmidt's information, the State pointed out that E.G. and Hanson's rocky

relationship, E.G.'s drinking and jealousy toward Hanson, her erratic behavior, contact with law enforcement, and E.G.'s threat to make Hanson's life a "living hell" if he ended their relationship were all matters known to Hanson prior to trial and sentencing and, thus, were not newly discovered. *Hanson v. State*, DA 15-0352, Br. of Appellee at 10-11. Moreover, the State asserted this information should have been presented in Hanson's original postconviction petition. Also, the State argued that the Schmidt's belief that E.G. could convince her son to make a false allegation against Hanson was inadmissible speculation. *Id.* at 11. And that Shirley Schmidt's belief that E.G. was going to "get Hanson," the potential testimony was inadmissible speculation and inadmissible character evidence precluded by the Montana Rules of Evidence.

As to Yvonne Marum, the State argued the information that her sons spent time at Hanson's residence and denied ever being molested by Hanson was cumulative to testimony presented at Hanson's sentencing hearing. Certainly Hanson was aware of the Marum kids spending time at his home. Thus, it was not newly discovered evidence. *Id.* at 12. Also, a closer review of Mark Schmidt's sentencing testimony reveals that he made reference to Marum, thus, Hanson could have identified Marum at that time. Also, Marum's statement that E.G.'s son, A.G., never expressed issues with Hanson to her or her children, was of no consequence because, A.G. himself initially denied any inappropriate interactions

17

with Hanson. The jury was made aware of A.G.'s initial denials of abuse and found his testimony to be credible nonetheless. *Id.* at 12.

As noted above, the trial court never ruled on the merits of Hanson's petition, but this Court finds the State's analysis and response to this "newly discovered" evidence to be persuasive. It is not clear that any of the evidence was truly newly discovered. Moreover, it appears to be cumulative to information that was presented at Hanson's trial and sentencing. Regardless, it is clear that this evidence does not meet the stringent and exacting standard set out by *Schlup*. That is, it does not support a convincing claim of Hanson's actual innocence. Further, Hanson has not shown that the failure of this Court to consider the evidence, and his claim, will result in a fundamental miscarriage of justice. Thus, Hanson has not established a valid basis to excuse his procedural default.

### III. Conclusion

Hanson's petition should be dismissed. The challenge he makes to his current incarceration and the pending criminal charges is not yet exhausted. The successive attack on his 1995 conviction is procedurally defaulted without excuse.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner

18

makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Hanson has not made a substantial showing that he was deprived of a constitutional right. Further, because a portion of his petition is unexhausted and the remainder is procedurally defaulted without excuse, reasonable jurists would find no basis to encourage further proceedings. There are no close questions and there is no reason to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court makes the following:

## RECOMMENDATION

1. The Petition (Doc. 1) should be DISMISSED as unexhausted and procedurally defaulted without excuse.

2. The Clerk of Court should be directed to enter by separate document a

judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Hanson may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Hanson must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 6th day of April, 2017.

*Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge

---

[4] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.